[No. E055263. Fourth Dist., Div. Two. Apr. 10, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
DRUDELL RODRICK KELLY, Defendant and Appellant.

## COUNSEL

Kari E. Hong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, J.**—In this case, we consider whether, after the operative date of the Criminal Justice Realignment Act of 2011 (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1; Pen. Code, § 1170, subd. (h))[1] (hereafter the Realignment Act or the Act), a defendant whose probation is revoked must serve his or her previously imposed and suspended sentence in state prison, according to the terms of the original sentence, even if the defendant otherwise qualifies for a term in county jail under the terms of the Act. The Act explicitly applies only to "any person sentenced on or after October 1, 2011." (§ 1170(h)(6).) Defendant contends, however, that a hearing in which a previously imposed and suspended sentence is executed is a sentencing proceeding for purposes of the Act.

We conclude that in enacting the Realignment Act, the Legislature intended to adhere to existing law as discussed in *People v. Howard* (1997) 16 Cal.4th 1081 [68 Cal.Rptr.2d 870, 946 P.2d 828] (*Howard*). In that case, the court held that a sentence which is imposed and its execution suspended while the defendant is on probation constitutes a judgment which cannot be modified upon revocation of probation; it can only be executed exactly as it was imposed. (*Id.* at pp. 1084, 1086–1095.) Accordingly, a defendant whose felony sentence was imposed prior to October 1, 2011, but executed after that

---

[1] All further statutory citations refer to the Penal Code unless another code is specified. Hereafter, section 1170, subdivision (h), and its subparts will be cited as "section 1170(h)" and so on.

date must serve the sentence in state prison. In so concluding, we disagree with the recent opinion in *People v. Clytus* (2012) 209 Cal.App.4th 1001 [147 Cal.Rptr.3d 448] (*Clytus*) (review den. Jan. 16, 2013, S206685), which holds that in enacting the Realignment Act, the Legislature intended not to apply the rule discussed in *Howard*, and that a sentence which is executed on or after October 1, 2011, must be served in county jail, if the offense and the defendant otherwise qualify for local custody under the Act.

We also conclude that section 1170(h)(6), as applied in this case, does not violate equal protection principles.

## BACKGROUND

In 2009, defendant and appellant Drudell Rodrick Kelly pleaded guilty to one count of infliction of corporal injury on a spouse or cohabitant. (§ 273.5, subd. (a).) By plea agreement, other counts were dismissed and an allegation that defendant had served a prior felony prison term was stricken. According to the terms of the plea agreement, the court imposed and suspended the agreed-upon sentence of four years in state prison. It placed defendant on probation subject to the condition that he serve 270 days in county jail.

On October 28, 2011, after a contested probation revocation hearing, the court found that defendant had violated his probation. The court revoked probation and executed the suspended sentence, ordering defendant committed to state prison for four years.

Defendant filed a timely notice of appeal from the order revoking probation. (§ 1237, subd. (b).)

## DISCUSSION

1. *A Defendant Is Not "Sentenced" Within the Meaning of the Realignment Act When a Previously Imposed and Suspended Sentence Is Executed upon Revocation of Probation.*

When defendant's sentence was imposed and suspended in 2009, all felony sentences were served in prison. Pursuant to the Realignment Act, low-level felony offenders, such as defendant, who have neither current nor prior convictions for serious or violent offenses or other specified offenses, are to serve their sentences in county jail, or under a so-called "split" sentence in which, a part of the sentence is served in county jail and a part of the sentence is served under the supervision of the county probation officer. (§§ 17.5, subd. (a)(5), 1170(h)(1)–(3), (5), (6).)

Section 1170(h)(6) provides that the sentencing changes made by the Realignment Act "shall be applied prospectively to any person sentenced on or after October 1, 2011." Defendant contends that a probation revocation hearing at which probation is revoked and the previously imposed sentence is executed is a sentencing hearing within the meaning of section 1170(h)(6).

██ Defendant's contention is contrary to well-established precedent. In *Howard, supra*, 16 Cal.4th 1081, the California Supreme Court discussed the distinction "between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences." (*Id.* at p. 1087.) When a court suspends *imposition* of sentence before placing a defendant on probation, there is no judgment pending against the defendant. Therefore, upon revoking probation, the court has full discretion to impose any appropriate sentence. The probation order is considered a final judgment only for the purpose of allowing the defendant to take an appeal from the order. (*Ibid.*; § 1237, subd. (a).) In contrast, when a court imposes sentence but suspends its *execution* during a period of probation, there is a judgment, and revocation of the order granting probation requires execution of the existing sentence, exactly as imposed. (*Howard, supra*, at pp. 1087–1088.)

██ The principles discussed in *Howard* are derived from section 1203.2, subdivision (c). (*Howard, supra*, 16 Cal.4th at pp. 1087–1088.) Section 1203.2, subdivision (c), provides that following revocation and termination of probation, "the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced. However, *if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect. . . .*"[2] (Italics added.) Similarly, California Rules of Court, rule 4.435(b), which implements section 1203.2, subdivision (c), provides that, upon revocation of probation, "(1) If the imposition of sentence was previously suspended, the judge must impose judgment and sentence after considering any findings previously made and hearing and determining the matters enumerated in rule 4.433(c)" or "(2) If the execution of sentence was previously suspended, the judge must order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment." These provisions, "by their terms, limit the court's power in situations in which the court chose to impose sentence but suspended its

---

[2] In section 1203.2, subdivision (c), "may" refers to the revoking the suspension of the sentence. Once the court chooses to do so, execution of the sentence exactly as previously imposed is mandatory. (See *Howard, supra*, 16 Cal.4th at p. 1088.)

execution pending a term of probation." (*Howard*, at p. 1088 [discussing § 1203.2, subd. (c) and Cal. Rules of Court, former rule 435, now rule 4.435].)

In *Clytus, supra*, 209 Cal.App.4th 1001, the court acknowledged the imposition/execution rule discussed in *Howard* but concluded, as a matter of statutory interpretation, that under the Realignment Act, a court executing a suspended sentence on or after October 1, 2011, lacks discretion to order the sentence served in prison if the defendant qualifies for a county jail term under the Realignment Act. (*Clytus*, at pp. 1006–1009.)

The court began its analysis with the provision in section 1170(h)(6) that " '[t]he sentencing changes made by the act that added this subdivision [(h)] shall be applied prospectively to any person sentenced on or after October 1, 2011.' " (*Clytus, supra*, 209 Cal.App.4th at p. 1006.) The court stated that the "plain meaning of this statute is that any sentence *executed* on or after October 1, 2011, for a felony that is not prison eligible shall be served in county jail under section 1170, subdivision (h)(2). Nowhere in the Realignment Act is there any indication the Legislature intended a different result if a prison sentence was imposed and suspended before October 1, 2011, and executed on or after October 1, 2011." (*Id.* at pp. 1006–1007, italics added.)

Relying on the rule that statutory interpretation begins by examining the language of the statute, giving the words their ordinary meaning and considering them in the context of the statutory framework, and the rule that if statutory language is clear and unambiguous there is no need for construction or to resort to external indicia of the intent of the Legislature, *Clytus* held that no further effort to construe the language of section 1170(h)(6) was necessary. (*Clytus, supra*, 209 Cal.App.4th at pp. 1006–1007.) However, the court did not explain why the phrase "sentenced on or after October 1, 2011" unambiguously has a meaning different from the traditional rule as discussed in *Howard*. The court acknowledged that the Criminal Justice Realignment Resource Center, an ad hoc steering committee created by the Administrative Office of the Courts to provide information concerning the Realignment Act, took the view that this language is ambiguous.[3] In the version of the resource center's "FAQ's" (frequently asked questions) which was current when *Clytus* was decided, the committee provided the following information:

"[Question:] Where will a defendant serve a sentence if prior to October 1, the court imposed and suspended execution of a sentence to state prison for a

---

[3] The resource center offers information and answers to frequently asked questions about the Act, with the cautionary statement that its proffered answers " 'are not to be construed as legal opinion or advice.' " (*Clytus, supra*, 209 Cal.App.4th at p. 1005.)

crime now punishable under section 1170(h), and after October 1 does not reinstate the defendant on probation?

"[Answer:] *There is no clear answer.* Likely the defendant will serve the term in county jail. The traditional rule is that once imposed, a suspended sentence may not later be modified. (*People v. Howard*[, *supra*,] 16 Cal.4th 1081, 1095.) The realignment legislation, however, applies to all sentencing proceedings occurring on or after October 1, 2011. Certainly the decision not to reinstate a defendant on probation and order into execution a suspended state prison sentence is a 'sentencing proceeding.' Furthermore, if the change from a state prison commitment to a county jail commitment is perceived as a less onerous sanction, a defendant may be entitled to the benefits of the change as a matter of equal protection." (Crim. Justice Realignment Resource Center, Frequently Asked Questions <http://www.courts.ca.gov/ partners/892.htm> [as of Oct. 2, 2012] (italics added, original italics omitted), cited and partially quoted in *Clytus, supra*, 209 Cal.App.4th at p. 1005 and set forth in full 209 Cal.App.4th at p. 1020, appen. B.)[4]

Despite the ad hoc committee's view that the provision is ambiguous, the court in *Clytus* held otherwise, without proffering any analysis. (See *Clytus, supra*, 209 Cal.App.4th at pp. 1006–1007.) *Clytus* also holds that the absence of any indication in the statute that the Legislature intended to adhere to the rule enunciated in *Howard* indicates that the Legislature did not intend to do so, and that *Howard* cannot be deemed authority for the interpretation of the Realignment Act because the Supreme Court could not have anticipated the sweeping changes brought about by realignment. In short, the court held that *Howard* simply does not apply to probation revocation under the Realignment Act. (*Clytus, supra*, at pp. 1005–1009.) We respectfully disagree with the court's analysis, and we come to the opposite conclusion.

■ In interpreting a statute, a court's objective is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People v. Yartz* (2005) 37 Cal.4th 529, 537 [36 Cal.Rptr.3d 328, 123 P.3d 604].) To do so, we look first at the statutory language. If it is clear and unambiguous, we go no

---

[4] Following publication of the opinion in *Clytus*, the resource center modified its answer to that question to read: "If the suspended term is for a crime now punished under section 1170(h), the term will be served in county jail if it is ordered into execution. (*People v. Clytus*[, *supra*,] 209 Cal.App.4th 1001.)" (<http://www.courts.ca.gov/partners/documents/cjr_faq.pdf> rev. Dec. 10, 2012 [as of Apr. 10, 2013].)

Defendant has requested that we take judicial notice of the steering committee's "FAQ's" as set forth in *Clytus*. We take judicial notice of the document as it existed when *Clytus* was published, as reproduced in *Clytus* (see *Clytus*, 209 Cal.App.4th at pp. 1017–1027, appen. B). On our own motion, we also take judicial notice of the current version, quoted above. (Evid. Code, § 452, subds. (c), (d).)

further. If, however, the language is ambiguous, we apply appropriate tools of statutory construction. (*Id.* at pp. 537–538.)

The sentencing provision in section 1170(h)(6) is not ambiguous on its face. However, if we accept that "any person sentenced on or after October 1, 2011," *might* have the meaning *Clytus* ascribes to it—i.e., that sentencing means any proceeding in which a sentence is either imposed or executed—the phrase becomes ambiguous because it is contrary to *Howard* and to section 1203.2, subdivision (c). (See *Howard, supra,* 16 Cal.4th at pp. 1087–1088; see also *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1528–1530 [153 Cal.Rptr.3d 428].)[5]

■ The rule of statutory construction that the Legislature is deemed to be aware of statutes and judicial decisions already in existence and to have enacted a statute in light of existing statutes and decisions (*People v. Yartz, supra,* 37 Cal.4th at p. 538) assists in resolving that potential ambiguity. Section 1203.2, subdivision (c), and its implementing rule of court, both of which distinguish between suspension of imposition of sentence and suspension of execution of a sentence previously imposed, were in effect before the Realignment Act was enacted. (*Howard, supra,* 16 Cal.4th at pp. 1087–1088.) *Howard* was decided in 1997. Consequently, the absence of any language in section 1170(h) which indicates an intention to abrogate *Howard* is prima facie evidence that the Legislature did not intend to do so.

■ Moreover, the Legislature did not repeal or amend section 1203.2, subdivision (c), when it enacted the Realignment Act, nor did it repeal or amend section 1203, subdivision (a), or section 1203.1, subdivision (a), both of which explicitly "preserve[] the distinction between suspended imposition and suspended execution types of probation." (*Howard, supra,* 16 Cal.4th at p. 1094.)[6] The enactment of section 1170(h)(6) without either amending or

---

[5] In *People v. Gipson, supra,* 213 Cal.App.4th 1523, the court disagreed with *Clytus* and concluded that a defendant is sentenced when sentence is imposed but execution is stayed during a period of probation. (*Id.* at pp. 1528–1530; accord, *People v. Mora* (2013) 214 Cal.App.4th 1477.)

[6] Section 1203, subdivision (a), provides: "As used in this code, 'probation' means *the suspension of the imposition or execution of a sentence* and the order of conditional and revocable release in the community under the supervision of a probation officer. As used in this code, 'conditional sentence' means the suspension of the imposition or execution of a sentence and the order of revocable release in the community subject to conditions established by the court without the supervision of a probation officer. It is the intent of the Legislature that both conditional sentence and probation are authorized whenever probation is authorized in any code as a sentencing option for infractions or misdemeanors." (Italics added.)

Section 1203.1, subdivision (a), provides: "The court, or judge thereof, in the order granting probation, may *suspend the imposing or the execution of the sentence* and may direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence, except as hereinafter set forth, and upon those terms and conditions as it shall

repealing those statutes or providing a definition of "sentenced" in section 1170(h)(6) which differs from the rule enunciated in *Howard* can be interpreted to mean only that the Legislature did not intend to do so. Moreover, section 1170(h)(5) refers to *imposing* a term in county jail but suspending *execution* of a portion of the sentence and placing the defendant under the supervision of the county probation officer. (§ 1170(h)(5) [introductory sentence], (B)(i).)[7] Thus, not only does the Act not explicitly abrogate *Howard* or create an exception to the rule discussed in *Howard*, it recognizes the distinction between imposition and execution of sentence.

For all of these reasons, we conclude that the Realignment Act does not abrogate *Howard*, and that a defendant who is "sentenced on or after October 1, 2011," is one whose sentence is imposed on or after that date, not one whose previously imposed and suspended sentence is executed on or after that date. Accordingly, defendant was not entitled to serve his sentence in local custody.

### 2. *The Issue Is Cognizable on Appeal.*

The Attorney General contends that defendant should not be allowed to challenge the terms of his plea bargain, which specifically included a state prison sentence. She contends both that a challenge to a negotiated sentence requires a certificate of probable cause and that a defendant is generally not allowed to challenge the terms of a plea bargain after having received the benefit of his bargain.

 The Attorney General is correct that a defendant cannot challenge the substance of a negotiated sentence without obtaining a certificate of probable

---

determine. The court, or judge thereof, in the order granting probation and as a condition thereof, may imprison the defendant in a county jail for a period not exceeding the maximum time fixed by law in the case." (Italics added.)

Section 1203.2, subdivision (c), provides: "Upon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced. However, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect. In either case, the person shall be delivered over to the proper officer to serve his or her sentence, less any credits herein provided for."

[7] As pertinent, section 1170(h)(5), provides:

"(5) The court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, may commit the defendant to county jail as follows:

"(A) For a full term in custody as determined in accordance with the applicable sentencing law.

"(B)(i) For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. . . ."

cause if the challenge to the sentence is in effect a challenge to the validity of the plea. (*People v. Buttram* (2003) 30 Cal.4th 773, 781–782 [134 Cal.Rptr.2d 571, 69 P.3d 420]; § 1237.5, subd. (b).) In determining whether a certificate of probable cause is required in order to challenge a bargained-for sentence, " 'courts must look to the substance of the appeal: "[T]he crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5. [Citation.]' [Citation.]" (*People v. Buttram*, at pp. 781–782.)

■ We asked the parties for supplemental briefing on the related question of whether defendant forfeited any right to challenge his sentence because he did not do so within 60 days after imposition of sentence. When a court imposes sentence but suspends its execution at the time probation is granted, the defendant has the opportunity to challenge the sentence in an appeal from the order granting probation. (*People v. Amons* (2005) 125 Cal.App.4th 855, 868–869 [22 Cal.Rptr.3d 908].) If the defendant allows the time for appeal to lapse during the probationary period, the sentence becomes final and is not appealable. (*Id.* at p. 869.) This is so regardless of the fact the defendant will not serve the sentence unless the court revokes and terminates probation before the probationary period expires. (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421 [72 Cal.Rptr.3d 340].)

Defendant asserts that his contention that section 1170(h) applies when a sentence is executed on or after the operative date of the statute is cognizable, despite the foregoing, because it is not a challenge to the sentence per se, but a narrow legal question, i.e., "whether the California Legislature intended him to benefit from" section 1170(h). We tend to agree with defendant that the threshold issue of the applicability of section 1170(h) is cognizable because it is not a challenge to the sentence per se and because it was necessary to resolve the applicability of section 1170(h) before we addressed the Attorney General's contention that the appeal must be dismissed for lack of a certificate of probable cause. In any event, because we have concluded that section 1170(h) does not apply to defendant, it is somewhat academic whether the appropriate remedy is to dismiss the appeal or affirm the judgment.

3. *Section 1170(h)(6) Does Not Violate Equal Protection Principles.*

Defendant contends that by failing to sentence him to county jail, the trial court "created two classes of people: (1) individuals who are sentenced after October 1, 2011 and will benefit from Section 1170(h); and (2) individuals such as [defendant], who are sentenced after October 1, 2011 who will not benefit from Section 1170(h)."

Defendant's argument fails because, as we have discussed, he was *not* sentenced after October 1, 2011; he was sentenced in 2009, and his sentence was merely executed following revocation of his probation in October 2011. Accordingly, the trial court did not create two classes of people sentenced after the operative date of section 1170(h) and accord them different treatment.

■ No further discussion is necessary. However, we note that in *People v. Cruz* (2012) 207 Cal.App.4th 664 [143 Cal.Rptr.3d 742], the Fifth District Court of Appeal rejected the contention that equal protection principles require that a defendant who was sentenced before October 1, 2011, but whose sentence was not final on appeal on that date to be afforded the benefit of sentencing under section 1170(h). (207 Cal.App.4th at pp. 668, 674–680.) We agree with that court's analysis. A fortiori, a person such as defendant, who was sentenced before October 1, 2011, and whose sentence was final on appeal before that date, has not suffered any violation of his or her right to the equal protection of the law.

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Codrington, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2013, S210792. Kennard, J., was of the opinion that the petition should be granted.