[No. D062007. Fourth Dist., Div. One. Mar. 29, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
MAYRA MORA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

**COUNSEL**

R. Clayton Seaman, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BENKE, Acting P. J.**—In February 2011, Mayra Mora entered a no contest plea to possession of heroin in violation of Health and Safety Code section 11350, subdivision (a), a nonviolent drug offense. The trial court suspended imposition of sentence, placed Mora on three years' probation and imposed a $200 restitution fine pursuant to Penal Code section 1202.4, subdivision (b).[1]

In August 2011, Mora admitted she violated the terms and conditions of probation. The trial court sentenced her to two years in state prison, suspended execution of the sentence and reinstated probation on the same terms and conditions as previously imposed. In December, the court found that Mora had violated probation. The court revoked and reinstated probation, and imposed a 90-day jail sentence.

On May 17, 2012, the trial court determined Mora again violated probation and committed her to state prison for two years, with 332 days' credit. The trial court refused to apply the Criminal Justice Realignment Act of 2011[2] (Realignment Act or Realignment), which would have allowed Mora to serve her sentence in a locally run community-based corrections program. (§§ 17.5, subd. (a)(5), 1170, subd. (h).) The court imposed a $240 restitution fine (§ 1202.4, subd. (b)), and imposed and suspended a $240 parole revocation restitution fine (§ 1202.45).

Mora contends the trial court erred by not applying the Realignment Act when it executed her sentence on May 17, 2012, and committed her to state prison. Relying on *People v. Clytus* (2012) 209 Cal.App.4th 1001 [147 Cal.Rptr.3d 448] (*Clytus*), she asserts Realignment applies to all eligible defendants whose sentences are executed on or after October 1, 2011. Mora argues interpreting Realignment to not apply to a defendant in her circumstances violates equal protection. She also contends the trial court erroneously imposed a duplicate restitution fine under section 1202.4, subdivision (b).

---

[1] Further statutory references are to the Penal Code.

[2] (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1, eff. Oct. 1, 2011; Pen. Code, § 1170, subd. (h).)

The People argue Mora is not entitled to retroactive application of the Realignment Act because her sentence was imposed before its effective date. They argue the trial court properly executed the sentence under *People v. Howard* (1997) 16 Cal.4th 1081 [68 Cal.Rptr.2d 870, 946 P.2d 828] (*Howard*), which distinguishes between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences. (*Id.* at p. 1087.) The People concede the trial court erred in imposing a duplicate restitution fine. They raise issues concerning the imposition of other fines, which we discuss in the unpublished portion of this opinion.

## I

## A

### *The Trial Court Correctly Determined Realignment Did Not Apply*

■ The Realignment Act significantly changes felony punishment by "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs . . . ." (§ 17.5, subd. (a)(5); see *People v. Lynch* (2012) 209 Cal.App.4th 353, 357 [146 Cal.Rptr.3d 811].) A felon sentenced under Realignment is committed to county jail instead of state prison, may have a concluding portion of his or her sentence suspended in lieu of probation and is not subject to parole under section 3000 et seq. (§ 1170, subd. (h)(1), (2) & (5); *Lynch*, at p. 357.) "The sentencing changes made by the act . . . shall be applied prospectively to any person sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6).)

The appellate courts are divided on the issue whether Realignment applies to an eligible defendant whose sentence was imposed and suspended before October 1, and whose probation was revoked and the sentence executed on or after October 1. In *Clytus*, a division of the Second District Court of Appeal held that Realignment applies in such circumstances. (*Clytus, supra,* 209 Cal.App.4th at p. 1005.) Declining to apply *Howard*, the *Clytus* court did not locate any language in section 1170, subdivision (h)(6) to suggest the Legislature intended a different result if a prison sentence was imposed and suspended before October 1, but executed on or after October 1. (*Clytus*, at pp. 1006–1008.) It reasoned that a trial court executing a suspended sentence as punishment for a probation violation has no discretion to commit a person to state prison for an offense that is no longer prison eligible. (*Id.* at p. 1006.)

■ Recently, another division of the Second District Court of Appeal held that Realignment does not apply to a defendant who was sentenced

before October 1, 2011, even if execution of that sentence occurs on or after October 1, 2011. (*People v. Gipson* (2013) 213 Cal.App.4th 1523 [153 Cal.Rptr.3d 428] (*Gipson*).) We agree with *Gipson*.

Realignment is effective for any person sentenced on or after October 1, 2011. (§ 1170, subd. (h)(6).) Relying on California Supreme Court precedent distinguishing between imposition and execution of a sentence, the *Gipson* court concluded that the word " 'sentenced' " refers to "the time when the trial court first announced and imposed sentence as opposed to the time when the sentence was executed." (*Gipson, supra*, 213 Cal.App.4th at p. 1529, citing *Howard, supra*, 16 Cal.4th at pp. 1087–1088; see Cal. Rules of Court, rule 4.405(6)[3] [" 'Sentence choice' means the selection of any disposition of the case that does not amount to a dismissal, acquittal, or grant of a new trial."].) Thus "a defendant is sentenced on the date that sentence is first announced and imposed even if execution of the sentence does not happen until a later date." (*Gipson*, at p. 1526.)

The imposition of the sentence is equated with entry of a final judgment. (*Gipson, supra*, 213 Cal.App.4th at p. 1529, citing *Howard, supra*, 16 Cal.4th at p. 1088.) Once a sentence is imposed, the trial court does not have jurisdiction to modify or change the final judgment and is required to order that judgment into execution. (*People v. Chagolla* (1984) 151 Cal.App.3d 1045, 1049 [199 Cal.Rptr. 181]; rule 4.435(b)(2) [if the execution of sentence was previously suspended, the judge must order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment].)

When the trial court revoked Mora's probation and executed her sentence on May 17, 2012, it lacked jurisdiction to modify the sentence committing her to state prison for two years. (*Gipson, supra*, 213 Cal.App.4th at p. 1530; rule 4.435(b)(2).) Because Mora was sentenced to state prison before October 1, 2011, her commitment to state prison upon revocation of probation does not violate the Realignment Act.

## B

### *The Application of the Realignment Act Only to Defendants Sentenced on or After October 1, 2011, Does Not Violate Equal Protection*

Mora argues not applying Realignment to persons whose sentences were imposed and suspended before October 1, 2011, but not executed until on or

---

[3] Further rule references are to the California Rules of Court.

after that date, deprives her of equal protection of the law. She contends applying Realignment to only those persons who were sentenced on or after October 1, 2011, creates a classification that affects two similarly situated groups of defendants who have committed nonviolent low-level felony offenses in an unequal manner: one group of defendants will serve their sentences in state prison; the other group will serve their sentences in community-based corrections programs.

■ The Legislature may make reasonable classifications of persons, provided the classifications are made with a legitimate goal to be accomplished. (*People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 [48 Cal.Rptr.2d 634].) To succeed on a claim under the equal protection clause, the appellant first must show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) The initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the challenged law. (*Ibid.*) Equal protection guarantees apply to penal statutes. (*People v. Bizieff* (1990) 226 Cal.App.3d 130, 138 [276 Cal.Rptr. 235].)

The People implicitly concede that requiring defendants whose sentences were imposed but not executed before October 1, 2011, to serve their sentences in state prison instead of community-based corrections programs creates two similarly situated classes of persons. The only distinguishing characteristic between the two classes is the date the sentence was imposed. Because the law treats these similarly situated groups differently, we undertake a second level of analysis and subject the law to the level of scrutiny that is constitutionally required. (*People v. Goslar* (1999) 70 Cal.App.4th 270, 277 [82 Cal.Rptr.2d 558].)

■ Classifying defendants by sentencing date is not made on the basis of race, alienage, national origin, gender or legitimacy, which requires a greater level of scrutiny. (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440 [87 L.Ed.2d 313. 105 S.Ct. 3249]; *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 [39 Cal.Rptr.3d 821, 129 P.3d 29]; *People v. Wilkinson* (2004) 33 Cal.4th 821, 836 [16 Cal.Rptr.3d 420, 94 P.3d 551].) Generally, if the classification does not involve a suspect class, legislation is presumed to be valid under the equal protection clause if the statutory classification is rationally related to a legitimate state interest. (*Cleburne*, at p. 440; *Wilkinson*, at p. 836.) A statutory classification that does not discriminate against suspect classes or infringe fundamental constitutional rights withstands an equal protection challenge " ' "*if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.*" ' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 482 [97 Cal.Rptr.2d 334, 2 P.3d 581].)

█ The Legislature may specify that a mitigating sentencing statute is prospective "to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*In re Kapperman* (1974) 11 Cal.3d 542, 546 [114 Cal.Rptr. 97, 522 P.2d 657].) Realignment applies prospectively to defendants sentenced on or after October 1, 2011. (§ 1170, subd. (h)(6).) The Legislature could rationally determine that a prospective application of the Realignment Act "maintains the integrity of sentences that were valid when imposed and ensures the discretion exercised in the charging, plea bargaining, and sentencing decisions of the People and trial courts is not destabilized or nullified." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 679–680 [143 Cal.Rptr.3d 742].)

The Legislature is not constitutionally compelled to give sentencing changes retroactive effect. (*People v. Floyd* (2003) 31 Cal.4th 179, 189 [1 Cal.Rptr.3d 885, 72 P.3d 820], citing *Talley v. Municipal Court* (1978) 87 Cal.App.3d 109, 114 [150 Cal.Rptr. 743].) " '[T]he [Fourteenth] Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' " (*Floyd*, at p. 191, quoting *Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 31 S.Ct. 490].) We are not persuaded by Mora's argument that excluding from Realignment persons whose sentences were imposed before October 1, 2011, but executed on or after that date, violates the right to equal protection of the law.

II

*The Court Erroneously Imposed a Duplicate Restitution Fine**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

On remand, the trial court is directed to modify the abstract of judgment by striking the section 1202.4 $240 restitution fine and modifying the section 1202.45 $240 parole revocation restitution fine to $200. The trial court shall

---

*See footnote, *ante*, page 1477.

send the abstract of judgment to the Department of Corrections and Rehabilitation. The section 1202.4 $200 restitution fine remains in effect. In all other respects, the judgment is affirmed.

Haller, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 19, 2013, S210456. Kennard, J., was of the opinion that the petition should be granted.